FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 04, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>EDGAR OMAR HERRERA FARIAS<br><br>        Defendant. | No.   4:15-CR-6049-EFS-16<br><br>**AMENDED[1] ORDER GRANTING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** |

Before the Court is Defendant Edgar Omar Herrera Farias' Motion to Withdraw Guilty Plea. ECF No. 1278. Defendant argues that he should be permitted to withdraw his guilty plea because former counsel, Peter Schweda, gave him erroneous legal advice. *See generally* ECF Nos. 1278 & 1327. The United States opposes Defendant's motion. ECF No. 1326. For the following reasons, the Court grants Defendant's motion.

### I.   F<small>ACTUAL</small> B<small>ACKGROUND</small>

On December 6, 2016, Mr. Herrera Farias, one of more than twenty defendants charged in the above-captioned case, was charged in the Second

---

[1] This Order amends pages 13 and 14 of the Court's earlier Order, ECF No. 1343.

1  Superseding Indictment with Conspiracy to Distribute 500 Grams or More of a
2  Mixture or Substance Containing a Detectable Amount of Methamphetamine, 5
3  kilograms or More of Cocaine, 1 Kilogram or More of Heroin and 400 grams or More
4  of N-phenyl-N Propanamide in violation of 21 U.S.C. § 846. ECF No. 105. Most of
5  the defendants pled guilty. However, three defendants did not – Mr. Herrera Farias,
6  Miguel Reyes Garcia, and Brittney Zaragoza. After several continuances, trial was
7  scheduled for October 10, 2018. ECF No. 740. On the morning of trial, both Mr.
8  Herrera Farias and Mr. Reyes Garcia pled guilty to 21 U.S.C. § 846, conspiracy to
9  distribute, without a plea agreement.[2] ECF No. 990. Sentencing for Mr. Herrera
10 Farias and Mr. Reyes Garcia was originally set for March 12, 2019. Mr. Reyes
11 Garcia's sentencing was rescheduled for March 20, 2019, due to scheduling conflicts
12 with defense counsel's calendar. ECF No. 1105. Mr. Herrera Farias' sentencing was
13 rescheduled to April 10, 2019.[3] At Mr. Herrera Farias' sentencing, Mr. Schweda

---

[2] Ms. Zaragoza was charged in the Second Superseding Indictment with Conspiracy to Commit Money Laundering, 18 U.S.C. 1956 (h), and two counts of Money Laundering in violation of 18 U.S.C. 1956(a)(1(B)(i). The morning of trial, Ms. Zaragoza and the Government agreed to a 60-month Pretrial Diversion Agreement. *See* ECF No. 995.

[3] Mr. Herrera Farias' sentencing was rescheduled twice. First, it was rescheduled to March 27, 2019 by request of defense counsel. Next, it was rescheduled to April 10, 2019, due to scheduling conflicts with the Court's calendar. ECF. No. 1192 & 1217.

informed the Court that Mr. Herrera Farias wished to withdraw his guilty plea and subsequently, asked to withdraw as counsel. ECF No. 1224. On April 17, 2019, Shea Meehan was appointed to represent Mr. Herrera Farias. On July 1, 2019, Mr. Herrera Farias filed a motion to withdraw his guilty plea. ECF No. 1278. On September 9, 2019, the Court held an evidentiary hearing on Mr. Herrera Farias' motion during which former counsel for Mr. Herrera Farias, Peter Schweda, investigator/interpreter Larry Valadez, and Mr. Herrera Farias testified. ECF No. 1321.

**A. Mr. Herrera Farias' Guilty Plea**

On the morning trial was set to begin, both Mr. Herrera Farias and Mr. Reyes Garcia pled guilty to Count One of the Second Superseding Indictment – without a plea agreement. *See generally* ECF No. 1248. The Government orally agreed it would not seek a leader/organizer enhancement and that it would recommend a two-level reduction for acceptance of responsibility for both defendants. *Id.* at 5.

At the change of plea hearing, the Court conducted a Rule 11 colloquy with each defendant, after which the Court found that there was a factual basis for the plea, and that each defendant entered the plea freely and voluntarily, understanding both the nature of the charges against him and the consequences of the plea. *Id.* at 63. However, during the colloquy of Mr. Herrera Farias, the Court read Count One of the Second Superseding Indictment and asked Mr. Herrera Farias if he intended to plead guilty to that count, which at that time, Mr. Herrera Farias asked to speak with counsel. *Id.* at 27. The Court permitted Mr. Herrera Farias to confer with Mr.

Schweda using a second interpreter there for the scheduled trial. The Court continued with the plea colloquy for Mr. Reyes Garcia and his attorney, Ken Therrien who had not raised any issue regarding 18 U.S.C. § 371; that colloquy concluded without any interruptions or requests for a conference with counsel.

Mr. Schweda testified at the evidentiary hearing that during the attorney-client discussion, he and Mr. Herrera Farias discussed the nature and extent of what Mr. Herrera Farias was going to admit to since the parties had a factual disagreement over the extent of Mr. Herrera Farias' involvement in the conspiracy.[4] *Id.* at 65:7-10. In contrast, Mr. Herrera Farias testified that, in addition to the factual disagreement, he and Mr. Schweda discussed several questions including whether he would receive five years or less if he were to plead guilty. *Id.* at 119. The individual that interpreted at this private conference did not testify at the evidentiary hearing.

After concluding the plea colloquy of Mr. Reyes Garcia, the Court resumed the plea colloquy with Mr. Herrera Farias. The Court described the statutory maximum sentence for Mr. Herrera Farias, including "[n]ot less than ten years in prison" and "a maximum possible penalty of life imprisonment." ECF No. 1248 at 50:22-25. Mr. Herrera Farias said he understood the maximum penalties. *Id.* at 51:5-6.

---

[4] Mr. Herrera Farias argues he was only involved with the conspiracy to distribute methamphetamine and was not aware of the other drugs charged in Count One. ECF No. 1248 at 52-53.

The Court then read the facts the Government would have to prove if the case went to trial. After the Court read the factual basis, Mr. Schweda interjected that Mr. Herrera Farias was only involved in the conspiracy concerning the methamphetamine and that he and Mr. Herrera Farias agreed the Government could prove that beyond a reasonable doubt. *Id.* at 53:9-23. The Court reiterated that the Government must prove beyond a reasonable doubt the conspiracy involved all of the drugs charged in Count One and that Mr. Herrera Farias was involved in at least one of the drugs listed. Mr. Herrera Farias agreed this was true. *Id.* at 54:2-14.

Mr. Schweda confirmed he had not reviewed Count One of the Second Superseding Indictment with Mr. Herrera Farias the day of Mr. Herrera Farias' change of plea, but that he had reviewed Count One with Mr. Herrera Farias many times prior. ECF No. 1248 at 56. The Court proceeded by reviewing Count One of the Second Superseding Indictment with Mr. Herrera Farias. Mr. Herrera Farias then pled guilty to Count One of the Second Superseding Indictment. Mr. Herrera Farias agreed he was pleading guilty because he was truly guilty. *Id.* at 57:1-20.

The Court then reviewed how sentencing would proceed. The Court instructed Mr. Herrera Farias that a guideline calculation would be conducted before sentencing and that the Court believed Mr. Herrera Farias' base offense level under the Guidelines would likely be 38, but that a range of imprisonment under the Guidelines could not be determined until sentencing. The Court further explained that it was not bound to follow the guidelines but that the Court would listen to Mr. Herrera Farias, Mr. Schweda, and the Government, along with reading the

Presentence Investigation Report (PSIR), and then impose a reasonable sentence. *Id*. at 55:1-19. Mr. Herrera Farias acknowledged he understood. *Id*. at 55:20.

Lastly, the Court found that there was a factual basis for the plea, that Mr. Herrera Farias entered the plea freely and voluntarily, understanding both the nature of the charges against him and the consequences of the plea. *Id*. at 57-63. The Court set sentencing, for both Mr. Herrera Farias and Mr. Reyes Garcia, for March 12, 2019, and referred the matter to the United States Probation Office (USPO) to prepare a PSIR.

**B.      Post Change of Plea Developments**

Mr. Schweda met with Mr. Herrera Farias on three separate occasions before the date set for sentencing. Mr. Schweda testified at the evidentiary hearing that during these meetings, he and Mr. Herrera Farias discussed Mr. Schweda's 18 U.S.C. § 371 conspiracy argument along with other theories he would raise regarding Mr. Herrera Farias' sentencing. ECF No. 1323 at 69-70:1.

In March 2019, the USPO issued Mr. Herrera Farias' PSIR in which it calculated Mr. Herrera Farias' Sentencing Guideline range to be 292-365 months. ECF No. 1166. On March 4, 2019, Mr. Schweda reviewed the PSIR with Mr. Herrera Farias. ECF No. 1323 at 69:7-11. On April 10, 2019, at Mr. Herrera Farias' sentencing, the court held an ex parte hearing, at which, Mr. Schweda notified the Court that Mr. Herrera Farias wanted to withdraw his guilty plea. Mr. Schweda stated that because one of the grounds asserted by Mr. Herrera Farias as a basis for withdrawing his plea was ineffective assistance of counsel, counsel wished to

withdraw from the case. The Court allowed a substitution of counsel and permitted Mr. Herrera Farias to move to withdraw his plea of guilty. ECF No. 1276. On April 17, 2019, Shea Meehan was appointed to represent Mr. Herrera Farias. On July 1, 2019, Mr. Herrera Farias filed a motion to withdraw his guilty plea. ECF No. 1278.

By contrast, Mr. Reyes Garcia proceeded to sentencing on March 26, 2019. The Court sentenced him to 180 months imprisonment. At no time did Mr. Reyes Garcia assert 18 U.S.C. § 371 applied. Mr. Reyes Garcia appealed. Mr. Therrien withdrew as counsel and appellate counsel was appointed. Appellate counsel simultaneously filed an *Anders* brief and motion to withdraw as counsel. After permitting Mr. Reyes Garcia the opportunity to file a pro se supplemental brief and upon receiving no supplemental briefing, the Ninth Circuit granted appellate counsel's motion to withdraw, finding that its "independent review of the record pursuant to *Penson v. Ohio*, 488 U.S. 75, (1988), discloses no arguable grounds for relief on direct appeal." *United States v. Garcia*, 787 Fed. Appx. 967, 967 (9th Cir. 2019).

## II. APPLICABLE LAW AND ANALYSIS

A defendant may withdraw his guilty plea before sentencing if he can show a "fair and just reason" for requesting withdrawal. *United States v. Garcia-Lopez*, 903 F.3d 887, 891 (9th Cir. 2018) (citing Fed. R. Crim. P. 11(d)(2)(B)). "Fair and just reasons for withdrawal include 'inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea.'" *Id.* at 891 (citing *United*

*States v. Yamashiro*, 788 F.3d 1231, 1237 (9th Cir. 2015)). "Erroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008).

The defendant has the burden of demonstrating a fair and just reason for requesting the withdrawal of a plea, however, the standard is "generous and must be applied liberally." *Garcia-Lopez*, 903 F.3d at 891. A defendant does not have to show that his plea is invalid to withdraw it. *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005). Rather, the defendant must show that his counsel's "gross mischaracterization . . . plausibly could have motivated his decision to plead guilty." *United States v. McTiernan*, 546 F.3d 1160, 1167 (citations and internal quotation marks omitted).

Mr. Herrera Farias relies on *Davis* to support his claim that Mr. Schweda advising him that he would receive a sentence of no more than five years if he pled guilty, rather than the 292 to 365 months recommended in the PSIR, is a fair and just reason to withdraw his guilty plea. *See* ECF Nos. 1278 & 1327. In *Davis*, the defendant wanted to withdraw his guilty plea before sentencing because his counsel allegedly told him that he would receive probation if he pled guilty. Defense counsel denied this allegation but admitted that he advised defendant that his potential sentencing range was probation to eight years. The district court found "that counsel had rendered constitutionally deficient performance when advising defendant on the entry of the guilty plea . . . [b]ecause there was little, if any, likelihood that defendant might receive a probationary sentence in this case." *Davis*, 428 F.3d at 804. And

"because mention of such possibility significantly skewed the sentencing range counsel presented, counsel grossly mischaracterized the likely outcome of the case." *Id*. On appeal, the Ninth Circuit concluded defense counsel's testimony that defendant was uncertain as to whether to plead guilty until the very last moment, defendant's son's testimony that defendant plead guilty to avoid jail, coupled with defendant's advanced age and poor health, supported a finding that defense counsel's gross mischaracterization of the likely sentencing range defendant would of received could have motivated defendant to plead guilty. *Id*. at 808.[5]

The United States argues *Davis* is "inapposite here" and relies on *United States v. Briggs*, 623 F.3d 724 (9th Cir. 2010), to support its argument that Mr. Herrera Farias was advised and fully informed of the maximum penalties when he pled guilty. ECF No. 1293. In *Briggs*, the Ninth Circuit affirmed the district court's denial of defendant's motion to withdraw his guilty plea. The defendant's primary basis for the motion was that he misunderstood the severity of the sentence he faced when he expected to receive a sentence of 200 months imprisonment and received a sentence of 324 months. *Id*. at 728-29. The court recognized that this case was different than *Davis*. It looked at the fact that the defendant was aware that he faced

---

[5] The Ninth Circuit found that under the correct legal standard "it would have been an abuse of discretion not to grant the defendant's motion to withdraw." *Davis*, 428 F.3d at 808. It remanded to the district court to decide anew defendant's motion to withdraw his guilty plea based on the correct legal standard. *Id*.

a substantial term of incarceration (at least 200 months) and failed to substantiate allegations of inadequate legal advice in any way. *Id.* at 729.

Here, Mr. Herrera Farias' reliance on *Davis* is not misplaced. The evidence supports Mr. Herrera Farias' claim that Mr. Schweda grossly mischaracterized Mr. Herrera Farias' sentence, which motivated Mr. Herrera Farias' decision to plead guilty. *See Davis*, 428 F.3d at 808. Here, similar to *Davis*, Mr. Herrera Farias wants to withdraw his guilty plea because he believed (based on Mr. Schweda's advice) that if he plead guilty, he would receive a maximum sentence of five years, rather than the 292 to 365 months recommended in the PSIR. However, unlike in *Davis*, where the statute allowed for the possibility of probation, Mr. Herrera Farias faced a mandatory minimum sentence of ten years.

The Ninth Circuit has generally found that a mere mistake in estimating sentence duration does not constitute a "gross mischaracterization." *United States v. Williams*, 678 Fed. Appx. 467, 468 (9th Cir. 2017) (unpublished) (holding defendant's counsel's predicted sentence of 111 months and defendant's sentence received of 175 months did not rise to the level of gross mischaracterization). However, where there is more than a "mere mistake[] in estimation regarding sentence duration," the Ninth Circuit has found that the erroneous advice satisfies the "gross mischaracterization" requirement. *See, e.g., Chacon v. Wood*, 36 F.3d 1459, 1464 (9th Cir. 1994) (finding "gross mischaracterization" where a defendant, who was told he would serve only three months in jail if he pled guilty, was ultimately sentenced to ten years in prison), *superseded on other grounds by* 28 U.S.C. § 2253(c); *Iaea v.*

*Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (holding there has been a "gross mischaracterization" where defendant, who was told his chances of getting a life sentence were "almost zero" and that he "could almost not consider it," was ultimately sentenced to life).

Here, the morning of trial, Mr. Herrera Farias and Mr. Schweda discussed whether Mr. Herrera Farias should plead guilty or proceed with trial. During these discussions, Mr. Schweda's investigator/interpreter, Mr. Valadez, was on a cellphone for 0.6 hours interpreting. ECF No. 1323 at 94:9-14. Mr. Schweda testified at the evidentiary hearing that Mr. Herrera Farias was "indecisive" on whether he should plead guilty or not. *Id.* at 60:6-10. It was not until Mr. Schweda was "walking out the door . . . holding [his] cellphone with [Mr. Valadez] on the phone" trying not to be late to court, when Mr. Herrera Farias "decided he wanted to plead guilty." *Id.* at 60:6-10. Mr. Schweda also testified that he did not promise or guarantee Mr. Herrera Farias any sentence, and that his 18 U.S.C. § 371 conspiracy argument was "novel" and that he was very clear with Mr. Herrera Farias that he should expect to receive a sentence of not less than ten years imprisonment. *Id.* at 29. However, Mr. Schweda conceded that is was "plausible" Mr. Herrera Farias went into the change of plea hearing believing that he could, in fact, have a sentence of five years or less if Mr. Schweda's 18 U.S.C.§ 371 conspiracy argument was successful, even despite the fact Mr. Herrera Farias had otherwise been advised that there was a ten-year mandatory minimum sentence under 21 U.S.C. § 846. *Id.* at 35:10-19. Mr. Schweda also testified that he did not inform Mr. Herrera Farias that the 18 U.S.C. § 371 conspiracy

argument would only be available on appeal, and agreed that it was possible Mr. Herrera Farias believed the Court would impose a sentence of five years or less when it sentenced him. *Id.* at 74:3-10. Mr. Valadez does not recall any discussion of 18 U.S.C. § 371. *Id.* at 84-85, 93-94 & 109. The Court notes Mr. Valadez was participating by cellphone and that he often relies on facial expressions when he interprets. *Id.* at 101:22-25.

Mr. Herrera Farias, who does not speak English, testified through an interpreter at the evidentiary hearing that the morning of trial is the first time he heard about Mr. Schweda's 18 U.S.C. § 371 conspiracy theory. And that he understood this to mean that if he pled guilty that morning, he would receive at most five years imprisonment based on "documents" or "papers" Mr. Schweda had, and could file. *Id.* at 119, 122, & 144. But if he was found guilty at trial, he could expect an imprisonment sentence of forty-one years to life. *Id.* at 117 & 140.

Mr. Schweda did submit trial materials to the Court – objections to the jury instructions, ECF No 979; objections to the PSIR, ECF No. 1143; and Mr. Herrera Farias' sentencing memo, ECF No. 1147 – arguing the maximum sentence should be five years or less because Mr. Herrera Farias was actually charged with conspiracy under 18 U.S.C. § 371, which has a maximum penalty of five years, rather than conspiracy under 21 U.S.C. § 871 cited in the Second Superseding Indictment, which has a maximum penalty of no less than ten years. Mr. Schweda made the same argument in his sentencing memorandum. Mr. Schweda conceded there is no case directly on point supporting his theory. ECF No. 1323 at 57:22. In fact, the only case

1  the Court found directly contradicts Mr. Schweda's theory.[6] *See United States v.*
2  *Frost*, 2005 WL 8153884, at *3 (D. Mont. Nov. 15, 2005) (unreported) ("Defendant's
3  arguments concerning 18 U.S.C. § 371 are irrelevant because she is not charged with
4  violating 18 U.S.C. § 371, but with 21 U.S.C. § 846, which is cited both in the caption
5  and in the body of Count 1."). The Court does not discourage counsel from fashioning
6  new arguments or theories when defending clients. However, here, on the morning
7  of trial, defense counsel spent 0.6 hours using an interpreter/investigator on a
8  cellphone in Spokane who does not recall any discussion about 18 U.S.C. § 371 or a
9  "novel" theory during the call with a non-English speaking Mr. Herrera Farias. Mr.
10 Schweda's research should have disclosed *Frost*—the only case from within the
11 Ninth Circuit—and, even though *Frost* was issued by a fellow district court and
12 therefore non-binding, he should have discussed the case with Mr. Herrera Farias
13 in order to give him a clear idea of the application of 18 U.S.C. § 371. He failed to do
14 this. By failing to provide Mr. Herrera Farias with this information, Mr. Herrera

---

[6] Mr. Schweda cited to *United States v. Arlt*, 252 F.3d 1032, 1039 (9th Cir. 2001), to support his theory. In *Arlt*, the Ninth Circuit addressed whether 18 U.S.C. § 371 and 21 U.S.C. § 846 constituted the "same offense" for purposes of double jeopardy, holding defendant's two convictions under 18 U.S.C. § 371 and 21 U.S.C. § 846 did not violate the Double Jeopardy Clause. *Id.* at 1039. This does not support Mr. Schweda's 18 U.S.C. § 371 theory.

Farias lacked practical information about the likely success of the novel § 371 theory and therefore was unable to make an informed decision.

The question is whether Mr. Schweda's representation as to 18 U.S.C. § 371 can be said to be a "gross mischaracterization" of Mr. Herrera Farias' sentencing exposure. Given all the testimony, the Court concludes that it is. Here, there was no possibility that Mr. Herrera Farias would be sentenced to less than ten years. In fact, with Mr. Herrera Farias' criminal history and the offense characteristics, it was likely Mr. Herrera Farias would be sentenced to more than ten years as recommended in the PSIR. ECF No. 1166. Mr. Schweda's testimony that, during the 0.6 hour conference, Mr. Herrera Farias was "indecisive" as to whether to plead guilty until the very last moment; Mr. Schweda's 18 U.S.C. § 371 conspiracy argument made in objections to the PSIR, sentencing memorandum, and objections to the jury instructions; and the attorney-client discussion about potential defense 18 U.S.C. § 371 conspiracy arguments just moments before Mr. Herrera Farias pled guilty, all "support a finding that defense counsel's gross mischaracterization of the likely sentencing range" "motivated [Mr. Herrera Farias] to plead guilty." *Davis*, 428 F.3d at 808. Because there is no possibility that Mr. Herrera Farias would receive a five-year sentence in this case, and because repeated mentioning of such possibility significantly skewed the sentencing range Mr. Schweda presented to a non-English speaking Mr. Herrera Farias, the Court finds that Mr. Schweda grossly mischaracterized the likely outcome of the case and rendered deficient performance

in advising Mr. Herrera Farias regarding the entry of a guilty plea. Thus, there is a fair and just reason to allow Mr. Herrera Farias to withdraw his plea.

### III. CONCLUSION

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Withdraw Guilty Plea, **ECF No. 1278**, is **GRANTED.**

2. Because Defendant's plea of guilty was subsequently withdrawn, Defendant is **deemed indicted** with respect to all charges contained in the Second Super Seeding Indictment **on the date this Order is entered.**

3. **A Case Management Order setting this case for trial on March 23, 2020, will be separately entered.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel, the U.S. Probation Office, and Mr. Schweda.

**DATED** this __4th__ day of February 2020.


                        s/Edward F. Shea
                        EDWARD F. SHEA
        Senior United States District Judge